## STATE MUTUAL LIFE AND ANNUITY ASSOCIATION
### v. BALDWIN.

1. An essential ingredient of libel is malice, express or implied.
2. Where a promissory note has been satisfied in full, and the payee, instead of complying with a promise to return it to the maker, negligently sends it to a bank "for collection, with instructions to protest said note if not paid," and it is accordingly protested for non-payment, such negligent conduct on the part of the payee amounts to an actionable wrong, if injury results therefrom to the maker's financial standing.
3. While in such a case it is the right of the injured party to maintain an action of tort for the recovery of all actual damages sustained by him, he is not entitled to punitive damages.
4. That the note was one which was not subject to protest can constitute no valid defense by the payee, if it was in fact protested at his instance, and injury to the credit of the maker actually resulted.

Argued November 13, 1902.— Decided January 9, 1903.

Action for damages.    Before Judge Henry.    Floyd superior court.    April 7, 1902.

*Dean & Dean,* for plaintiff in error.
*Seaborn & Barry Wright,* contra.

LITTLE, J.    An action was brought by J. C. Baldwin against the State Mutual Life and Annuity Association, the plaintiff basing his alleged right to recover upon the following recitals of fact:    He "carried a policy with said corporation, and had given [to it] his note for" $23.76, "due on February 1, 1901, which represented the premium on said policy for the quarter ending on or about the date of the maturity of said note."    Just prior to its maturity, "one J. V. Sparks, a representative of said corporation, called upon petitioner, . . and agreed to allow petitioner to give his note for the amount of the said note falling due on February 1st, without interest, and to fix the time of maturity of same ninety days from the date of the new note, provided petitioner would pay for the quarterly premium on his said policy ending April 9th, 1901."    In accordance with this understanding, he "paid the premium on his said policy for" that quarter, and "in consideration of said payment, as agreed, the new note was to be signed, due ninety days after date, and the old note due on the first of February, 1901, was to be delivered to petitioner."    On January 30th, 1901, "the premium paid by petitioner having been forwarded to said corporation, the new note was sent to petitioner for his signature, which he signed on said date . . and immediately returned to said corporation."    In the letter which it sent to him, it enclosed the new note, saying this note was "to take the place of the old note," which would be forwarded to him "in lieu of the new one."    Yet, "notwithstanding he had paid the note falling due on February 1, 1901, in the manner alleged," he subsequently "received notice from the Fourth National Bank of Atlanta, Ga., that it held same for collection, and petitioner immediately wrote to said defendant corporation of the notice he had received, requesting that the note be recalled from the bank and delivered to petitioner; but notwithstanding said request, said corporation negligently failed and refused to take up same and deliver to petitioner according to agreement, but several days later, to wit: on the 4th day of February, 1901, allowed same to go to protest."    He had "a good financial credit before said note was wrongfully and negligently allowed to go to protest by defendant corporation, and his credit has been damaged by defendant because of said wrongful protest."    Furthermore, "in addition to the damage to his credit because of said protest, petitioner has been humiliated and greatly embarrassed because of the wrongful and negli-

gent allowing of his note which had been settled to go to protest, for which said corporation is liable for punitive damages." By reason "of the facts set forth, he has been injured and damaged in the sum of twenty-five hundred dollars." The defendant corporation filed a demurrer based on several grounds, one of which presented the objection that the plaintiff did not allege that the note was protested "at the instance and direction of defendant." This point was met by an amendment to the petition, in which was set forth the allegation that: "Defendant sent said note to said bank for collection, with instructions to protest said note if not paid." The demurrer also embraced the following grounds: "First. There is no cause of action against the defendant stated in plaintiff's petition. Second. No damage has been specified in plaintiff's petition, upon which a recovery could be had. Third. It is not shown by plaintiff's petition that the note" alleged to have been paid "was protestable;" and, lastly, that paragraph of plaintiff's petition in which he alleges he suffered embarrassment and humiliation "should be stricken, for there is no cause shown for punitive damages." The trial judge passed an order overruling the demurrer, and to this judgment exception was taken.

1. The foregoing epitomizes the case presented by the record transmitted to this court. It is essentially different in principle from the case to which counsel called our attention, arguing that the principles decided controlled the legal points involved in the present record. For a notary public "falsely and maliciously to protest for non-payment" commercial paper, and to then make publication of his wrongful protest, is undoubtedly libelous, and not only he but all other persons participating with him in such unlawful conduct may be held accountable therefor in an action for libel. *May* v. *Jones*, 88 *Ga.* 308. But an essential ingredient of libel is malice, express or implied (Civil Code, §§ 3832, 3833); and there is no claim on the part of the plaintiff below that the defendant corporation wilfully and maliciously allowed his note to go to protest. Counsel for each party, in their briefs and arguments before this court, treated the action as one of libel; but as the petition not only did not allege that the protest of the note was falsely and maliciously caused by the defendant, but by the use of apt words negatived the idea of malice, the action can not be treated as one of libel, and the principle of law cited from *May* v. *Jones*, supra, is not authority applicable to the facts of this case.

2. We understand the first ground of the demurrer as presenting the contention of the defendant that the plaintiff's grievance is not one which the law recognizes as an actionable wrong. Or, in other words, that the act of the defendant corporation was injuria sine damno — a mere petty annoyance of so trivial a character as not to call for legal redress. This position very naturally suggests the inquiry: Was not the conduct of the defendant well calculated to arouse the righteous indignation of any reasonable, well-thinking, and law-abiding man? This inquiry can not, of course, be said to furnish the test for determining whether or not the plaintiff has a cause of action; but it is nevertheless pertinent as shedding some light on the question of what was meant by the sages of the law, themselves reasonable and well-thinking men, when they gave sanction to the doctrine that mere imaginary grievances, without tangible injury to any vested legal right, do not call for recognition by the courts. Now what, in good faith and in good conscience, was the defendant association under a duty to do with the plaintiff's note, after promising to return it to him in lieu of the new note which he duly signed and forwarded to it, relying upon its promise to comply with its agreement? Clearly, the old note should have been promptly surrendered into his possession; and this being so, the association was wholly unauthorized, either under that agreement or under any principle known to the law, to transmit the note to the bank for collection, with direction to protest the same if not paid. Such an unauthorized act is surely a civil wrong, if done without any valid legal excuse. A mistake, induced by the offending party's inexcusable negligence and neglect of duty, can not be relied on as a justification; for a person to whom another owes a specific legal duty is entitled to protection, not only against the latter's malicious wrong-doing, but against his negligence as well.

In the Civil Code, § 3837, it is provided that a false and malicious charge against a person which is calculated to injuriously affect his financial standing as a business man is actionable per se, in that damage will be inferred. Why, then, should a breach of duty which actually damages one's credit be considered an act which is injuria sine damno, simply because the mischief-maker happens to be a negligent wrong-doer, rather than a malicious one? There is, indeed, very respectable authority for the proposition

that a party to a contract is under a common-law duty to exercise due diligence in the performance of his obligations thereunder, and is accordingly liable in damages "for any negligence or misfeasance in the execution of the contract." 1 Jaggard on Torts, 95 ; 2 Id. 897 et seq. Thus it was held in a New York case that where a promissory note had been duly satisfied under an agreement contemplating that it should be returned to a person who had indorsed it, and the party who undertook to return it not only failed to do so but transferred it to another, the conduct of such party amounted to an actionable wrong, and he was liable in damages therefor, even though the note was past due when it was transferred and no legal recovery could have been had thereon. Barmon v. Lithauer, 43 N. Y. (4 Keyes) 317. It appeared that the indorser had, by failing to make a proper defense to an action brought against him on the note, been subjected to liability thereon. The court held he could not justly claim that this result was one which naturally flowed from the wrong committed in transferring the note, especially as he had not called upon the wrong-doer to defend the action; and that therefore no more than nominal damages could be recovered from him. In a concurring opinion, Woodruff, J., took the position that had the wrong-doer been notified of the suit on the note, and the defendant thereto had exercised due diligence to successfully defend it, he would be entitled to be reimbursed for counsel fees and other expenses incurred by him, and could also demand compensation for his time and labor in defending the action. Our own case of *Atlanta National Bank* v. *Davis*, 96 *Ga.* 334, is also in point. There it was held, in effect, that where funds are deposited in bank under an agreement that they shall be subject to check, the contract obligation of the banker to honor checks so long as the depositor has funds in bank with which to meet them imposes upon the banker a common-law duty, not only to act in good faith, but to exercise due diligence in the premises; and therefore, where payment of a check has been wrongfully refused, the banker can not be heard to say he has not committed an actionable wrong, since there was no "wilful dishonor of the paper," and the fact that it was not paid "was due solely to the negligent mistake of an employee of the bank."

3. In view of other grounds upon which the defendant below based its demurrer, we are called upon to determine whether the

plaintiff pursued his proper remedy, and, if so, what should be the measure of his recovery.  " Private duties may arise from statute or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, gives a right of action." *Railway Co.* v. *Brauss*, 70 *Ga.* 368. " If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded upon a contract.  In such a case, the liability arises out of a breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty." Ibid.  So the injured party may elect to declare upon the contract and recover damages for a breach thereof, or else bring an action ex delicto and recover for damages arising from such neglect of duty. *Southwestern Railroad* v. *Thornton*, 71 *Ga.* 61.  For instance, if one party sells to another "all timber of a certain description on certain lands," with the privilege of removing the timber from the land within a designated period, and, after payment of the purchase-price by the latter, and after he has cut and removed a part of the timber, wrongfully compels him "to stop cutting it and to give up the contract," by threatening to " have him arrested " if he continues " to carry out the contract," the vendor is to be regarded as a wrong-doer, and, as such, liable in damages as a tortfeasor.  *Lea* v. *Harris*, 88 *Ga.* 236.  Our Civil Code, §§ 3807 (3), 3810, expressly authorizes the bringing of an action ex delicto whenever special damage flows from the " violation of some private obligation" or the violation of any specific duty " created by contract, express or implied."  It was evidently the purpose of the plaintiff to institute an action of that nature. See, in this connection, 1 Enc. Pl. & Pr. 146 – 148.  In view of the decision of this court in *Chapman* v. *Telegraph Co.*, 88 *Ga.* 763, it is clear that the plaintiff was not entitled to recover anything for his alleged injured feelings, resulting from the negligent act of the defendant association in disregard of its obligations under its contract with him.  Certainly, he was not entitled to punitive damages.  " If a tort is committed through mistake, ignorance, or mere negligence, the damages are limited to the actual injury received," for vindictive or punitive damages are recoverable only when a defendant acts " maliciously, wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." · 5 Am. & Eng. Enc. of Law, 21 – 22.  There being, in the present case, no

charge that the defendant acted maliciously, wilfully, or wantonly, the trial judge erred in not sustaining that ground of the defendant's demurrer which expressly raised the point that the plaintiff was not, under the allegations of his petition, entitled to recover punitive damages.

That he sustained actual loss by reason of his financial credit being injuriously affected is, however, distinctly alleged; and this being so, the trial court could not properly assume that, if afforded an opportunity, he would be unable to show by competent evidence that such was the case. *Brown* v. *Drake*, 101 *Ga.* 132. It is true that the plaintiff does not state how much of the amount for which he sues represents the damages growing out of the fact, admitted by the demurrer, that his credit was impaired, nor how much of that amount he claims by way of compensation for injured feelings. But this point was not raised by the demurrer; and the plaintiff's failure to be more specific in this regard was an amendable defect in his pleadings, and one which will be cured by verdict, in the event he successfully sustains his contention that he has suffered actual pecuniary loss. This he must show by satisfactory proof, there being no presumption in his favor that the wrongful act complained of was necessarily attended with actual damages. It is here to be remarked that the present case does not belong to that class of cases wherein the rule obtains that the dishonor of a check by a banker, when there are in his hands funds belonging to the drawer with which to meet it, gives rise to an action ex delicto, "although the customer did not thereby sustain any actual loss or damage." See Broom's Com. Law (9th ed.), 84; *Atlanta National Bank* v. *Davis*, 96 *Ga.* 334, and authorities therein cited in support of the ruling that "In such case, the bank, even though there was no proof of special damage, was liable to the drawer of the check for such temperate damages as would be a reasonable compensation for the injury" suffered. The rule just mentioned forms an exception to the general rule, which is recognized by our Civil Code, that, save where a tort is committed maliciously, wilfully, or wantonly, proof of actual damages is necessary to sustain an action ex delicto brought by a person whose rights under a contract have been wrongfully disregarded by another party thereto. A peculiar relation exists between a banker and his customers — a relation based upon trust and confidence,

and so close that, at common law, special regard was given to the rights of the latter, by the adoption of this exception to the rule applying in ordinary cases where no relation of a fiduciary character exists between the parties to a contract.

4. It only remains to dispose of that ground of the demurrer in which the plaintiff's petition is met with the objection that it does not disclose that the note sent to the bank for collection was "protestable." Whether it was or was not is, in view of the amendment to the petition, wholly immaterial. Of course, if the defendant association simply, by mistake, sent the note to the bank for collection, and it was not one which was subject to protest, the association would have no reason to apprehend, and would not be liable for, any wrongful act of the bank in improperly bringing it to protest. However, as has been seen, the plaintiff, by way of amendment, distinctly alleged that the association " sent said note to said bank for collection, with instructions to protest said note if not paid." Accordingly, this case is controlled by the ruling announced in *May* v. *Jones,* 88 *Ga.* 308, 310, wherein it was said that when commercial paper is wrongfully protested : " It matters not that the protest carries on its face evidence of its own invalidity. Its validity would probably pass unquestioned even by those who saw the writing, on the presumption in favor of the official act. . . Moreover, the hurtful consequences to the " credit of the person thereby affected " would not be confined to those parties immediately interested to inquire into the regularity of the protest. The news of the protest would be quickly spread to each indorser and become a matter of common knowledge in his business circle. It would run through the complex avenues of trade, beyond pursuit and correction by the true character of the protest." Besides, in the present case, it is incumbent upon the plaintiff to show, as a condition precedent to recovery, that the wrongful protest complained of did in fact have a practical effect whereby he actually sustained pecuniary loss. He should be given an opportunity to so prove, if he elects to proceed further with the case.

*Judgment affirmed in part, and in part reversed. All the Justices concurring, except Lumpkin, P. J., absent.*