42589. TICOR CONSTRUCTION COMPANY, INC. v. BROWN.
(340 SE2d 923)

PER CURIAM.

Pursuant to a default judgment against the appellant, Ticor Construction Co., the DeKalb County Superior Court granted the appellee, James Brown, $12,000 in compensatory damages, $10,000 in punitive damages, and $800 in attorney fees. In this appeal of the trial court's denial of the appellant's motion to set aside the default judgment, the appellant raises two general issues. We affirm in part and reverse in part.

Brown sued Ticor for negligent repairs to his house. He asked for an unspecified amount of compensatory damages, $20,000 in punitive damages, and attorney fees. When Brown discovered that Ticor's registered agent had resigned, he perfected service upon the Secretary of State, who acknowledged service of process on September 6, 1984. See OCGA § 14-2-62 (b). Brown subsequently gained the default judgment when Ticor failed to appear at trial.

We granted Ticor's application to appeal the trial court's ruling, and directed the parties to address the following questions: (a)

Whether the complaint alleged a claim that would support a prayer for punitive damages; (b) If the answer to question (a) is no, then could the complaint be supplemented by evidence at trial to establish such a claim; (c) Whether the Secretary of State is authorized to waive defects in service of process, and; (d) If the answer to question (c) is yes, whether the acknowledgment in this case constituted a waiver.

(1) The appellee's complaint alleged that the appellant "negligently performed said repair [to the roof] to the detriment of the plaintiff." The complaint also alleged that "the work done by the defendant was done in a shabby and unworkmanlike manner and not in accord with standard business practice." Allegations of simple negligence, absent a showing of an aggravating circumstance, will not support a claim for exemplary damages. *State Mut. Life. &c. Assn. v. Baldwin*, 116 Ga. 855, 860 (43 SE 262) (1903); OCGA § 51-12-5.

(2) The trial court's order read, "After hearing evidence from the Plaintiff, James T. Brown, it is the judgment of this court that the Plaintiff shall recover from the Defendant, Ticor Construction Co., Inc., the sum of $12,000 as compensatory damages, $10,000 as punitive damages and $800 as attorney's fees." No transcript of the hearing on damages appears in the record. Where no transcript exists, we normally assume that the evidence amended the pleadings to conform to the judgment. OCGA § 9-11-15(b); *Hopkins v. Hopkins*, 168 Ga. App. 144 (308 SE2d 426) (1983).

In *Stroud v. Elias*, 247 Ga. 191, 192 (275 SE2d 46) (1981), however, we held that "a defendant in default and not present at the trial of the case [could not] be held to have 'consented' to [an] amendment of the pleadings to conform to the evidence presented in his or her absence." For the purposes of this case, the appellant was put on notice that the appellee considered his conduct in repairing the appellee's roof to be merely negligent. The trial court, thus, should have granted the appellant's motion to set aside the award of punitive damages.

(3) OCGA § 14-2-62 (a) provides for service of process upon the registered agent for a domestic corporation "in the manner provided by law for the service of a summons and complaint." OCGA § 14-2-62 (b) provides that upon failure to locate a registered agent, a party wishing to serve a complaint upon a domestic corporation may serve the Secretary of State instead, "by delivering to and leaving with him . . . duplicate copies of such process, notice, or demand." OCGA § 9-11-4 (c) states that "process shall be served by the sheriff of the county where the action is brought or where the defendant is found," or by other specifically enumerated persons. The appellant complains that since process was not served upon the Secretary of State by one of the persons specifically enumerated in OCGA § 9-11-4 (c), service

was defective. He then asserts that the Secretary of State may not waive defects in service of process when it acts as agent for a corporate defendant.

In *Bricks v. Walker Showcase, Inc.*, 255 Ga. 122, 123-24 (336 SE2d 37) (1985), we held that methods of service set out in the Civil Practice Act, OCGA § 9-11-1 et seq., and the Georgia Business Corporation Code, OCGA § 14-2-1 et seq., are "discrete methods of service upon corporations," and that "a plaintiff may serve a defendant corporation by following the directions of the Civil Practice Act or by following the directions of the Georgia Business Corporation Code." The method set out in OCGA § 14-2-62 requires a plaintiff to first attempt to serve a corporate defendant's registered agent "in the manner provided by law for the service of a summons and complaint." This sub-section, thus, specifically incorporates the standard procedures for service of process established in OCGA § 9-11-4.

If that method fails, the plaintiff is required to deliver to and leave with the Secretary of State copies of the process, notice, or demand. This step, established in OCGA § 14-2-62 (b), makes no reference to the Civil Practice Act, and does not, unlike the previous sub-section, incorporate procedures for service set out in OCGA § 9-11-4. Process under OCGA § 14-2-62 (b), thus, does not necessarily have to be served by any of the persons specifically listed in OCGA § 9-11-4 (c). We hold that the Secretary of State's acknowledgment of service in this case constitutes adequate proof of the required delivery, absent a countervailing showing by the corporation. As service was not, thus, defective, we need not reach any questions of waiver.

(4) Ticor, in addition, contends that the statutory scheme providing different procedures for handling service upon foreign and domestic corporations denies domestic corporations equal protection under the state and federal constitutions.

The statute dealing with service upon foreign corporations, OCGA § 14-2-319, provides that when a party is unable to locate the registered agent for a foreign corporation and subsequently serves the Secretary of State as the corporation's agent, the Secretary of State must forward a copy of the complaint to "the corporation at its principal office in the jurisdiction under the laws of which it is incorporated." The statute dealing with service upon domestic corporations, OCGA § 14-2-62, provides that when a party is unable to locate the registered agent for a domestic corporation and subsequently serves the Secretary of State as the corporation's agent, the Secretary of State must forward a copy of the complaint to the corporation's registered office.

Each foreign corporation doing business within Georgia must file the address of its principal office in its home state, its registered office in Georgia, and its registered agent in Georgia with the Secretary of

State. OCGA §§ 14-2-314; 14-2-317. Each domestic corporation doing business within Georgia must file the address of its registered agent and its registered office with the Secretary of State. OCGA § 14-2-60. In each case, the registered office and the registered agent must have identical addresses. OCGA §§ 14-2-60; 14-2-317. The Secretary of State, as a practical matter, has two lists of addresses for foreign corporations and one list for domestic corporations.

The legislature treated domestic and foreign corporate defendants alike in the first two possible steps of serving process. The registered agent is served first, and, if he cannot be located, the Secretary of State is then served. The difference in treatment that the appellant complains of begins with the Secretary of State's handling of the complaint after he has been served. He sends a copy of a complaint against a domestic corporation to the address where the registered agent could not be found. He sends a copy of a complaint against a foreign corporation to the corporation's principal office.

The Secretary of State, thus, sends a copy of a complaint against a domestic corporation to an address where he knows that the registered agent for the corporation was not reached. He sends a copy of a complaint against a foreign corporation to an address where there is a chance that the corporation might be reached. Once the Secretary of State has been served, foreign corporations have a second chance of receiving notice of a lawsuit, while domestic corporations have much less of a chance.

A corporate defendant has an interest in receiving notice of a lawsuit against it. Our strict construction of service requirements, allowing plaintiffs to serve the Secretary of State upon failure to locate a corporation's registered agent even when the plaintiff has the home address of the corporation, see *Frazier v. HMZ Property Management, Inc.*, 161 Ga. App. 195 (291 SE2d 4) (1982), creates an imbalance in the protection of foreign and domestic corporations' interest in receiving notice. The difference in treatment gives foreign corporations two chances to learn of lawsuits, while domestic corporations may only have one opportunity. No "good faith" requirement exists to eliminate this distinction as a practical matter.

Rules setting out proper methods of service are meant to protect a defendant's right to defend a lawsuit while providing a plaintiff with the knowledge of the final steps that he must take to commence an actual lawsuit. Rules of service relating to corporations, as seen above, are more forgiving to foreign corporate defendants than to domestic corporate defendants.

The issue in controversy here, however, is not the denial of a corporation's right to notice of a hearing, a right which could be considered a fundamental right, the impairment of which would require a high level of scrutiny. Here, we have disparate treatment of two clas-

ses of truant, not diligent, corporations. OCGA §§ 14-2-60 and 14-2-317 provide the procedure, which comports with due process, *S. Donald Norton Properties, Inc. v. Triangle Pacific, Inc.*, 253 Ga. 761 (325 SE2d 160) (1985), that a corporation may follow to insure that it will receive notice of any lawsuits against it. This case involves different methods by which the state grants grace to corporations that have failed to comply with OCGA §§ 14-2-60; 14-2-317. The impairment of an interest in legislative grace hardly requires strict scrutiny.

Under the classic equal protection analysis we must now determine whether the distinction in procedure created in OCGA § 14-2-1 et seq., is "rationally related to furthering a legitimate state interest." *Massachusetts Bd. of Retirement v. Murgia*, 427 U. S. 307, 312 (96 SC 2562, 49 LE2d 520) (1976). In other words, the legislature's decision to require the Secretary of State to send a copy of the complaint involving a domestic corporation to its registered office, knowing that the registered agent is not there, rather than the principal office, which might well be a different address at which the corporation might receive notice of the lawsuit, must be rationally related to a legitimate state interest.

The legislature probably requires the Secretary of State to compile separate lists of principal office addresses and registered office addresses for foreign corporations because the two addresses must be different. Perhaps the legislature does not require that domestic corporations list a principal office in addition to the registered office because it assumed that the two addresses would often be identical. *This* distinction between foreign and domestic corporations could thus be rationally related to the state goal of efficiency in preventing an unnecessary build-up of duplicative addresses in the Secretary of State's office.

The *subsequent* distinction in treatment occurring after the Secretary of State acknowledges service could be based upon the state's interest in attracting foreign corporations to do business in Georgia. Domestic corporations might be more likely to be aware of lawsuits filed against them than foreign corporations would, and thus presumably would face fewer hardships in discovering such suits where a registered agent is lacking. Since there could be said to be a rational relationship between the distinction between the treatment of two types of corporations and a legitimate state interest, the distinction, however unfairly it may operate, does not violate the equal protection clause of the United States Constitution. *Murgia*, supra.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

The distinction in treatment occurring after the Secretary of

State acknowledges service could only be based upon the previous distinction. The Secretary of State sends a copy of the complaint to the only address that a domestic corporation has filed, even though a previous attempt to serve the registered agent at that address has failed. He sends a copy of the complaint to a foreign corporation's principal office in its home state presumably because no notice has yet been sent to that address, and because a previous attempt to serve the registered agent at the registered address in Georgia has failed. Though the initial distinction could be based upon interest in efficiency, this distinction, stemming from the initial distinction, requires a futile and wasteful action on behalf of the Secretary of State. The scheme providing for service of process on corporations, thus, when seen as a whole, discriminates against domestic corporations in a manner that ultimately cannot be rationally related to any legitimate state interest. The distinction in the Secretary of State's actions after he acknowledges service violates the Equal Protection Clause of the United States Constitution. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (96 SC 2562, 49 LE2d 520) (1976). The trial court thus erred in failing to set aside the default judgment involved in this case.

In any event, foreign corporations will not be attracted to Georgia because of the shoddy way with which domestic corporate defendants may be treated. The majority bases its rationalization upon the way foreign corporations are treated, not the *distinction* in the way that the two types of corporations are treated. The majority answers the wrong question because it has no answer for the correct question. Another way to describe the majority opinion lies in the South Georgia expression, "It's weak as pond water."

I respectfully dissent.

DECIDED MARCH 20, 1986 —
RECONSIDERATION DENIED APRIL 1, 1986.

*Cox & Richard, Dale C. Ray, Jr., Martin G. Cox,* for appellant. *Charles W. Boyle,* for appellee.