INTERNATIONAL CAPITAL
EQUIPMENT LIMITED,
Plaintiff,

v.

COMPUTER ATLANTA, INC., or its
successor in interest, Defendant.

No. 1:89–CV–096–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 17, 1989.

Jeffrey Wendell Kelley and John Weldon
Harbin, Powell Goldstein Frazer & Murphy, Atlanta, Ga., for plaintiff.

A. Felton Jenkins, Jr. and Gregory
Stuart Smith, King & Spalding, Atlanta,
Ga., for defendant.

ORDER

ROBERT H. HALL, District Judge.

This case is currently before the court on
defendant's motion to dismiss pursuant to
Rule 12(b)(2) of the Federal Rules of Civil
Procedure. Defendant moves to dismiss
the Complaint filed in this action on the
ground that plaintiff, International Capital
Equipment Limited ("ICE"), is a foreign
corporation transacting business in Georgia
without a certificate of Authority. O.C.G.
A. § 14–2–310. Pursuant to O.C.G.A.
§ 14–2–331(b) any foreign corporation
which "transacts business" in this state
within the meaning of the registration statute must procure a certificate of authority
before it may maintain any action, suit or
proceeding in a court of this state. The
fact that this action is in federal court does
not alter the applicability of this statute.[1]

FACTS

Plaintiff, ICE, is a Bermuda Corporation
with its principal place of business in Hamilton, Bermuda. Defendant, Computer Atlanta, is a Georgia Corporation with its
principal place of business in Marietta,
Georgia. ICE and Computer Atlanta entered into Equipment Purchase Agreements in 1986. A dispute arose regarding
performance under the agreements, and
that dispute forms the basis for this lawsuit.

There is no question that the plaintiff is
a foreign corporation which has not obtained a certificate of authority to transact
business in Georgia. Therefore, Defendant's motion to dismiss turns upon whether ICE is required under the Georgia statutes to obtain such authorization. Section
14–2–310 of the Official Code of Georgia
provides that "[n]o foreign corporation
shall have the right to transact business in
this state until it shall have procured a
certificate of authority to do so from the
Secretary of State." Thus the inquiry in
this case turns upon whether the plaintiff
is "transacting business" in Georgia. The
statute also provides a non-exclusive list of

---

1. Where jurisdiction is based on diversity of
citizenship, a federal district court cannot entertain a claim if the courts of the forum state
could not entertain the same claim. *Kinetic
Concepts Inc. v. Kinetic Concepts Inc.*, 601
F.Supp. 496 (N.D.Ga.1985).

12 activities that do not constitute transacting business. ICE argues that its activities fall within three of the enumerated sections of § 14–2–310. This court agrees with the plaintiff that its activities fall within the interstate commerce exception under § 14–2–310(b)(9) and do not constitute transacting business.[2] Thus plaintiff is not required to register with the secretary of state before it may maintain this action, and Defendant's motion to dismiss is DENIED.

*Transacting Business*

ICE is in the business of conditionally guaranteeing the future residual value of equipment. For a fee, (referred to as the "commitment fee") ICE enters into an agreement with its customer, known as an Equipment Purchase Agreement ("EPA"), to purchase certain equipment from the customer at a specified date in the future for a specified price. This conditional guarantee is a form of collateral that assists the customer in obtaining additional financing. ICE's obligation is conditioned upon the proper exercise of the option and is, of course, subject to the terms and conditions of the EPA.

ICE has two wholly owned subsidiaries domiciled in the United States.[3] It does business throughout the United states and in at least three foreign countries. The normal manner in which ICE enters into EPA's is through its offices in Larchmont, New York. The potential customer contacts the office in Larchmont and requests and receives a quote, usually over the phone. If the parties decide to enter into an agreement, the EPA and any other documents utilized are prepared and signed by ICE in New York and sent by mail or overnight courier to the customer. The customer then signs the EPA and any related agreements and returns the documents with the commitment fee to ICE in Larchmont. The commitment fee is deposited in a bank account of ICE in New York or in the Islands of Bermuda.

Later, if the customer wants ICE to purchase the equipment covered by the EPA, the customer mails to ICE a notice of delivery. The customer then delivers the equipment to a location specified by ICE; ICE inspects the equipment at that location and sends payment to the customer. Finally the transaction is completed when the customer delivers to ICE a Bill of Sale.

ICE and its subsidiaries have never had an office in Georgia or any employees working regularly or residing in Georgia. ICE has never maintained any warehouses, shipping terminals, telephone listings, books or records in the state of Georgia. It appears that ICE representatives have traveled to Georgia only twice and on both occassions the trips were primarily for purposes other than business with Georgia customers. Affadavit of Richard Kenyon ¶ 25.

If a foreign corporation's transactions in Georgia are exclusively or dominantly interstate in nature it will be characterized as "interstate" and the corporation need not register with the Secretary of State. *De-kalb Cablevision Corp. v. Press Association, Inc.*, 141 Ga.App. 1, 232 S.E.2d 353 (1977). It is only where the "local activities of the foreign corporation are not merely ancillary to the interstate features, but constitute a substantial local and domestic business separate from its interstate business, that the foreign corporation must comply with the state statute." *Id.* at 3, 232 S.E.2d at 354. Plaintiff's business was and is interstate.

This court held in *Al & Dick, Inc. v. Cuisinarts*, 528 F.Supp. 633 (N.D.Ga.1981) (Hall, J.) that a foreign corporation that distributed the industry's standard food processor in Georgia was not transacting business in this state. The court held Cuisinarts exempt from the state's registration requirement even though the corpora-

---

**2.** Since the court holds that plaintiff is not transacting business in Georgia because its activities constitute interstate commerce, we find it unneccessary to reach plaintiff's arguments regarding § 14–2–310(b)(6) and (b)(7).

**3.** Prior to October of 1985, one subsidiary had its office in New York, New York and the other had its office in Chicago, Illinois. In October of 1985 both offices were consolidated and relocated to Larchmont, New York.

tion had an independant representative stationed in Georgia and there was evidence of numerous contacts with Georgia including trips, advertising, and even warehousing products in the state.

If transactions in Georgia between a foreign corporation and a local entity exhibit both interstate and intrastate features, foreign corporations activities must be examined to determine their dominant characteristics. Plaintiff's local activities were minor and ancillary to thier interstate dealings. ICE had fewer and less significant contacts with Georgia than did the the foreign corporation in *Cuisinarts*. Therefore, this court holds that ICE activities are predominantly interstate in nature.

CONCLUSION

Plaintiff's activities in Georgia do not constitute transacting business within the terms of O.C.G.A. § 14–2–310. Therefore Plaintiff was not required to register with the secretary of state before filing this action. Consequently ICE, "conducting business in interstate commerce is justified and welcomed" to use a federal diversity court sitting in Georgia to resolve its disputes with Computer Atlanta. *Foxco Industries Limited v. Fabric World Inc.*, 595 F.2d 976 (5th Cir.1979). Defendant's motion to dismiss is DENIED.

So ORDERED.