**Reg M. TOMLIN, d/b/a Tomlin Marketing, Plaintiff,**

v.

**WHITE DAIRY ICE CREAM CO., INC., Defendant.**

No. Civ.A.CV296–205.

United States District Court, S.D. Georgia, Brunswick Division.

May 14, 1997.

J. Thomas Whelchel, Bradley J. Watkins, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Plaintiff.

George Marion Earle, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Defendant.

### *ORDER*

ALAIMO, District Judge.

Plaintiff, Reg M. Tomlin, d/b/a Tomlin Marketing ("Tomlin"), brings this diversity breach of contract action against Defendant, White Dairy Ice Cream Co., Inc. ("White Dairy"). White Dairy filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process or, in the Alternative, to Transfer Proceedings ("Motion to Dismiss"), which will be **GRANTED** for the reasons set forth below.

### *FACTS*

White Dairy is a corporation organized under the laws of Arkansas with its principal place of business located in Fort Smith, Arkansas. White Dairy engages in the sale of dairy products that it manufactures, as well as dairy products bought from other manufacturers. Donald R. Tankersley ("Tankersley") was the President of White Dairy during the time period relevant to this litigation, and remains as President through the present day.

On August 7, 1985, Tomlin and White Dairy entered into a written contractual agreement whereby Tomlin was to act as a broker and sales representative for White Dairy. Under that contract, Tomlin was to solicit orders for the sale of ice cream products to military exchanges and commissaries worldwide, excluding the United States, and non-military customers worldwide, excluding the United States. At the time the 1985 contract was negotiated and executed, Tomlin was a resident of Texas.

In 1987, Tomlin moved to St. Simons Island, Georgia. On June 20, 1988, White Dairy and Tomlin entered into a second written contract that contained essentially the same terms and conditions as the 1985 contract, under which Tomlin's duties and obligations were largely the same as those under the 1985 contract. Tomlin was a resident of Georgia during the time that the 1988 contract was negotiated and executed.

On November 17, 1994, White Dairy and Tomlin entered into a third written contract that contained essentially the same terms and conditions, and obligated Tomlin to perform the same duties and obligations as the previous two contracts. As with the 1988 contract, Tomlin was a resident of Georgia during the time that the 1994 contract was negotiated and executed.

In 1996, Tomlin was advised by a letter from counsel for White Dairy that the 1994 contract was terminated.[1] (Letter from Smith to Tomlin 9/6/96, at 3 (attached as Ex. D to Pl.'s Resp. to Def.'s Mot. to Dismiss).) Thereafter, Tomlin filed the instant action seeking damages for breach of contract. Tomlin, through his counsel, served the summons and complaint on White Dairy by delivering a copy of the same by certified mail, return receipt requested, to "Mr. Donald R. Tankersley, White Dairy Ice Cream Co., Inc." at the address for White Dairy's principal place of business. (J. Thomas Whelchel Aff. ¶ 3, Ex. A (attached as Ex. E to Mot. to Dismiss).) Tomlin also served a copy of the process on the Secretary of State of Georgia. (Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. S.)

---

1. In that letter, White Dairy contends that the 1994 contract never was operative. (Letter from Smith to Tomlin 9/6/96, at 2–3.)

## 1356

### DISCUSSION

### I. *Rule 12(b)(5) Motion to Dismiss for Insufficiency of Service of Process*

■ White Dairy moves for dismissal pursuant to, *inter alia,* Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process. The Court must look to Georgia law to determine the sufficiency of service of process since jurisdiction is based on diversity of citizenship. *See Woods v. Interstate Realty Co.,* 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949) (holding that where federal jurisdiction is based on diversity of citizenship, federal courts cannot entertain a claim if the courts of the forum state could not entertain the same claim). If service is insufficient under Georgia law, then the Court must dismiss the case. *Abe Eng'g, Inc. v. Travelers Indem. Co.,* 210 Ga.App. 551, 436 S.E.2d 754, 755–56 (1993) (" 'Where there has been no legal service on the defendant and no waiver of service, the court has no jurisdiction to enter any judgment in the case unless it be one dismissing the case for lack of jurisdiction.' " (citations omitted)).

White Dairy contends that service by certified mail upon a foreign corporation [2] is not permitted by Georgia law. (Mot. to Dismiss at 11.) Tomlin, conversely, contends that such service is authorized by section 14–2–1510(b) of the Georgia Business Corporation Code, which provides that

[i]f a foreign corporation has no registered agent or its registered agent cannot with

reasonable diligence be served, the corporation may be served by registered or certified mail, return receipt requested, addressed to the chief executive officer, chief financial officer, or secretary of the foreign corporation, or a person holding a position comparable to any of the foregoing, at its principal office shown in the later of its application for a certificate of authority or its most recent annual registration. Any party that serves a foreign corporation in accordance with this subsection shall also serve a copy of the process upon the Secretary of State.

Ga.Code Ann. § 14–2–1510(b) (Michie 1994). White Dairy, however, asserts that section 14–2–1510(b) applies only to foreign corporations that hold a certificate of authority to transact business in Georgia or that are required to obtain such certificate.[3] (Reply of White Dairy to Pl.'s Resp. to Mot. to Dismiss at 2.)

The first inquiry for the Court is whether section 14–2–1510(b) applies to foreign corporations that do not hold a certificate of authority and that do not transact business within Georgia. Regrettably, neither the parties nor the Court were able to find any case law addressing this issue under current Georgia law.[4]

■ Section 14–2–1510(b) provides that the process must be mailed to the address of the principal office as shown "in the later of its application for a certificate of authority or its most recent annual registration." [5] § 14–

---

**2.** Georgia law defines a foreign corporation as a corporation incorporated under laws other than the law of Georgia. Ga.Code Ann. § 14–2–140(10) (Michie Supp.1996).

**3.** A foreign corporation may not transact business in Georgia until it obtains a certificate of authority from the Secretary of State. Ga.Code Ann. § 14–2–1501(a) (Michie Supp.1996).

**4.** White Dairy cites to *Al & Dick, Inc. v. Cuisinarts, Inc.,* 528 F.Supp. 633, 634 (N.D.Ga.1981), which holds that a foreign corporation could be served pursuant to a *former* Georgia statute that provided for service by mail upon foreign corporations only if that corporation qualified or should have qualified to transact business in Georgia. That former statute provided that

[w]henever a foreign corporation doing business or having done business in this State shall fail to appoint or maintain a registered agent in this State, or whenever any such registered agent cannot with reasonable diligence be found at the registered office, ... the Secretary

of State shall be an agent of such corporation upon whom any such process ... may be served.

Ga.Code § 22–1410(b) (current version at § 14–2–1510(b)).

Tomlin argues that changes in the terms of the statutes indicate the Georgia legislature's intent to make the current statute applicable to all foreign corporations. (Pl.'s Resp. to Def.'s Reply Br. on Mot. to Dismiss at 3–4.) Tomlin maintains that the "clear language" of the former statute limited its application to foreign corporations that were or should have been qualified to transact business in Georgia, whereas the current statute contains no such limitation. (*Id.* at 4.) Although the current statute does not contain an explicit limitation, the Court believes that such limitation is implicit, as discussed *infra.*

**5.** A foreign corporation holding a certificate of authority is required to file an annual registration statement with the Secretary of State that includes, *inter alia,* the mailing address of its

2–1510(b). Directing parties to mail the process to the addresses as shown in those documents necessarily assumes that service is to be made upon foreign corporations that either hold a certificate of authority or have applied for such certificate. Section 14–2–1510(b) makes no other provision with respect to addresses, and the absence of such a provision indicates that service by mail was contemplated with respect only to foreign corporations holding a certificate of authority or applying for such certificate. The Court concludes, therefore, that service of process by mail under section 14–2–1510(b) applies only to foreign corporations that hold a certificate of authority or that transact business within Georgia.

The second inquiry for the Court is whether White Dairy "transacted business" within Georgia and, thus, was required to obtain a certificate of authority. Section 14–2–1501(b) of the Georgia Business Corporation Code provides a non-exhaustive list of activities that do *not* constitute "transacting business." White Dairy asserts that its activities fall within four of the enumerated exceptions of section 14–2–1501(b) and, thus, do not constitute "transacting business." (Reply of White Dairy to Pl.'s Resp. to Mot. to Dismiss at 4–5.) Activities that do not constitute transacting business include

> [e]ffecting sales through independent contractors; [s]oliciting or procuring orders, whether by mail or through employees or agents or otherwise, where the orders require acceptance without this state before becoming binding contracts and where the contracts do not involve any local performance other than delivery and installation; ... [s]ecuring or collecting debts or enforcing any rights in property securing the same [and]; ... [e]ffecting transactions in interstate or foreign commerce. ...

§ 14–2–1510(b)(5), (6), (8), (11). A foreign corporation involved in any one of the enumerated activities is not required to obtain a certificate of authority. *See International Capital Equip. Ltd. v. Computer Atlanta, Inc.,* 715 F.Supp. 371, 372 n. 2 (N.D.Ga.1989) (stating that it is unnecessary for the court to

reach arguments regarding other exceptions because the court holds that plaintiff's activities fall within the interstate commerce exception) (decided under former § 14–2–310(b), *repealed by* § 14–2–1510(b)).[6]

■ The Court agrees with White Dairy that its activities fall within the interstate commerce exception of section 14–2–1501(b)(11). A foreign corporation is not transacting business if its activities are exclusively or predominantly interstate in nature. *See id.* at 372 (citing *DeKalb Cablevision Corp. v. Press Ass'n, Inc.,* 141 Ga.App. 1, 232 S.E.2d 353, 354 (1977)). "It is only where the 'local activities of the foreign corporation are not merely ancillary to the interstate features, but constitute a substantial local and domestic business separate from its interstate business ...' " that the foreign corporation is deemed to be transacting business within Georgia. *Id.*(quoting *DeKalb Cablevision Corp.,* 232 S.E.2d at 354).

White Dairy's activities in Georgia largely consisted of visits by its officers, including (1) one visit by Tankersley to Atlanta in 1985 to discuss a potential agreement whereby the products of a non-Georgia company would be shipped overseas, (2) four visits by Tankersley to St. Simons Island in 1986, 1990, 1991, and 1995, to discuss White Dairy's military business with Tomlin, (3) one visit by Tankersley to St. Simons Island in 1988 to prepare with Tomlin a presentation for military commissaries in Germany, and (4) one visit by another White Dairy officer to St. SImons Island in 1995 to prepare with Tomlin a presentation for a trip to Panama. (Tomlin Aff.¶ ¶ 4-5, 12-16 (attached as Ex. E to Pl.'s Resp. to Def.'s Mot. to Dismiss).) In sum, a total of seven visits by White Dairy officers to Georgia were made during a ten year period, all of which concerned sales of products to the military and preparation for presentations made outside of Georgia. White Dairy's activities in Georgia also included advertising in a trade magazine that was distributed in Georgia. (Pl.s Resp. to Def.'s Mot. to Dismiss at 15-16.) In addition, Tomlin alleges that White Dairy had significant con-

---

principal office. Ga.Code Ann. § 14–2–1602(a)(3) (Michie 1994).

**6.** Although *International Capital Equipment* was decided under a statute that was repealed, that statute was similar to the current statute, § 14–2–1501(b).

tact with Georgia in that its 'entire billing operation' was performed by Tomlin from St. Simons Island.[7] (Pl.s Resp. to Def.s Reply Br. on Def.'s Mot. to Dismiss at 6.)

White Dairy's contacts with Georgia were minor and ancillary to their interstate activities. White Dairy never had an office, warehouse, plant, or shipping terminal in Georgia, nor did it solicit sales to Georgia customers. White Dairy's limited activities within Georgia were predominately interstate in nature and, therefore, fall within the interstate commerce exception of § 14–2–1501(b)(11). Accordingly, White Dairy was not "transacting business" within the state of Georgia and, thus, was not required to obtain a certificate of authority. Since White Dairy neither held a certificate of authority nor was required to obtain such certificate, section 14–2–1510(b), which authorizes service by mail upon foreign corporations, is inapplicable.

Instead, service of process upon a foreign corporation that does not hold a certificate of authority and that does not transact business within Georgia may be made in accordance with section 14–2–504 of the Georgia Business Corporation Code. *Charming Shoppes of Del., Inc. v. Parrish,* 214 Ga.App. 729, 448 S.E.2d 781, 782 (1994). Section 14–2–504(b) provides that

> "[i]f a corporation has no registered agent or its registered agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail, return receipt requested, addressed to the *secretary* of the corporation at its principal office."

Ga.Code Ann. § 14–2–504(b) (Michie 1994) (emphasis added). "Secretary" is defined as "the corporate officer to whom the board of directors has delegated responsibility ... for custody of the minutes of the meetings of the board of directors and of the shareholders and for authenticating records of the corpo-

ration." Ga.Code Ann. § 14–2–140(22) (Michie Supp.1996).

 Tomlin served the President of White Dairy rather than the secretary. The service of process effected by Tomlin, therefore, is insufficient under section 14–2–504(b). Accordingly, the Court concludes that White Dairy has not been properly served and will dismiss the case for lack of jurisdiction.

## II. *Other Bases for Dismissal or Transfer*

Since the Court will grant White Dairy's Motion to Dismiss for insufficiency of service of process, it is not necessary to reach the other bases for dismissal or, alternatively, for transfer, that are asserted by White Dairy.

### *CONCLUSION*

The Court carefully has considered the arguments raised by both parties. White Dairy's Motion to Dismiss is **GRANTED** without prejudice. The Clerk is directed to enter the appropriate judgment.

**SO ORDERED.**

---

7. The billing process for White Dairy's overseas military accounts was as follows: (1) the overseas military commissary system would transmit an order for a specific product to the Defense Personnel Supply Center ("DPSC"), (2) the necessary shipment information would be sent to Military Distributors of Virginia ("MDV"), (3) White Dairy would be notified to arrange for the transport of the product to MDV for shipment overseas, (4) once the product arrived at MDV, MDV would send copies of the purchase order and shipping documents to Tomlin at his St. Simons Island address, (5) Tomlin would generate an invoice, which he would forward to the DPSC for payment, and finally (6) payment would be sent directly to White Dairy in Fort Smith, Arkansas. (Tomlin Aff. ¶ 9 (attached as Ex. E to Pl.'s Resp. to Def.'s Mot. to Dismiss).)