S98A1903. LEWY v. BEAZLEY et al.
(507 SE2d 721)

SEARS, Justice.

This is an election case. Appellant Emily Lewy desired to run for a seat in the Georgia House of Representatives. Her nomination petition was rejected by the Secretary of State's Office due to improper notarization of some petition pages. She appeals the denial of mandamus relief that she sought in order to reverse the Secretary of State's decision. Under the circumstances of this case, we conclude that the Secretary of State's office was not obligated to inform a would-be candidate of published case law interpreting the Code sections pertaining to the nomination petition process, especially when such case law is easily discoverable through reasonable research. Therefore, we affirm.

Lewy is a Dahlonega attorney, and she sought to have her name placed on the ballot as an independent candidate for the office of State Representative from the Seventh District. She obtained information from the Secretary of State's Office, including nomination petition forms and the Georgia Election Code and Rules of the State Election Board. That information informed Lewy that in order to gain access to a ballot as an independent candidate, she was required to file a petition with the Secretary of State's Office containing a number of signatures equivalent to one percent of the registered voters eligible to vote for that office in the previous election.[1]

Lewy was required to obtain 1,175 voter signatures on her petition. She obtained 1,493 signatures, and filed her petition with the Secretary of State's Office on July 13, 1998. While reviewing the petition, the Secretary of State's Office discovered that certain pages of the petition had been notarized by an individual who also was a

---

[1] OCGA § 21-2-170 (b).

circulator of the petition, in violation of *Poppell v. Lanier*.[2] The 326 signatures that appeared on the improperly notarized pages were disqualified. That reduced the number of signatures to 1,167, eight signatures short of the number required for Lewy to be placed on the ballot.

On July 27, 1998, Lewy was officially notified that her petition was deficient under *Poppell v. Lanier*, supra. On August 3, she filed a petition for mandamus relief in Fulton County Superior Court. Oral argument was held shortly thereafter, and on August 13, the superior court denied the requested relief. After timely filing her notice of appeal, Lewy applied to this Court for an expedited appeal pursuant to OCGA § 21-2-171 (c), which was granted by the Court on August 31, 1998.[3] On appeal, Lewy's sole argument is that she was not given proper notice of the *Poppell* restrictions on the notarization of a nomination petition.

1. Each person circulating a page of a nomination petition must verify by affidavit that the petition was circulated in compliance with Georgia law.[4] In order for the affidavit to be valid, it must be notarized by a person who is not a party to the transaction for which the notarial act is required.[5] This Court held in *Poppell v. Lanier* that a person who circulates pages of a petition is a party to the petition as a whole, and may not act as notary with respect to any pages of the petition — even those that she did not circulate.[6] It was under this authority that 326 signatures on Lewy's nomination petition were disqualified.

2. The Secretary of State is charged with the responsibility "to prepare and provide a notice to all candidates for . . . state office advising [them] of such information . . . as may, in the discretion of the Secretary of State, be conducive to the fair, legal, and orderly conduct of . . . elections."[7] Lewy argues that when the Secretary of State's Office provided her with information on the petition and qualification process, it also was obligated to inform her that *Poppell* prohibits petition circulators from acting as notaries. Otherwise, argues

---

[2] 264 Ga. 473 (448 SE2d 194) (1994)

[3] Citing *Prison Health Svcs. v. Dept. of Administrative Svcs.*, 265 Ga. 810 (462 SE2d 601) (1995), the State argues that because Lewy's mandamus petition sought to reverse the decision of the Secretary of State's Office, an administrative agency, she was required to follow the discretionary appeal procedures of OCGA § 5-6-35 (a) (1). However, OCGA § 21-2-171 (c) clearly states that an appeal from the denial of mandamus relief seeking to reverse an administrative denial of a nomination petition "may be taken within five days [from] the entry thereof to the Supreme Court." Thus, this Court clearly has jurisdiction over this matter.

[4] OCGA § 21-2-183 (b).

[5] OCGA § 45-17-8 (c). See OCGA § 45-17-1 (2).

[6] *Poppell*, supra.

[7] OCGA § 21-2-50 (10).

Lewy, she had no way of knowing of the *Poppell* restriction on notaries, as the restriction is not evident on the face of the Code sections pertaining to the nomination process. Unless the trial court's denial of her mandamus petition is reversed, argues Lewy, she will be denied reasonable access to the ballot for the Georgia House of Representatives.[8]

We disagree. The *Poppell* restrictions on notaries have been in place since 1994, well before Lewy began circulating her nomination petition. It was not incumbent upon the Secretary of State to inform Lewy of the case law relevant to the nomination process, or to provide Lewy with the citations for published case law interpreting Code sections relative to that process. To the contrary, it was incumbent upon Lewy, a would-be candidate for elected office, to research the law relative to her nomination petition, and thereby ensure her compliance with all necessary procedures and requirements. In reaching this conclusion, we note that, while the *Poppell* restriction may not be evident on the face of the Code sections outlining the nomination process, the *Poppell* decision is included in the official annotation to OCGA § 21-2-170 (Supp. 1998), and thus cannot be considered to be obscure. Furthermore, while we agree with a recent observation made by the United States District Court that it would be beneficial for the legislature to codify the *Poppell* decision,[9] such is not yet the case. For its part, the Secretary of State's Office complied with its statutory duty under OCGA § 21-2-50 when it provided Lewy with instructions on the nomination petition process and all of the relevant Official Code sections and Election Board Rules. Accordingly, the judgment of the trial court denying mandamus relief is affirmed.[10]

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Hunstein, J., who concur specially.*

HUNSTEIN, Justice, concurring specially.

In *Poppell v. Lanier*, 264 Ga. 473 (448 SE2d 194) (1994), a majority of this Court recognized that the plain language of OCGA § 45-17-8 (c) cannot be interpreted in any other manner than to conclude that

---

[8] See *Jenness v. Fortson*, 403 U. S. 431 (91 SC 1970, 29 LE2d 554) (1971).

[9] See *Natural Law Party of Georgia et al. v. Massey et al.*, No. 1:96CV2524-CC (N.D. Ga., Oct. 17, 1996), slip op. at 5.

[10] The record indicates that the circulator of some of Lewy's petition pages had served as a notary for the affidavits attached to petition pages circulated by others. However, it cannot be determined from the record whether all of the improper notary attestations in this matter were made on petition pages circulated by someone other than the disqualified notary, or if the disqualified notary also circulated certain petition pages that she then notarized. Accordingly, it is unclear whether the concerns raised in the dissent to *Poppell*, 264 Ga. at 475, exist in this matter. In any event, Lewy does not argue this point in her appeal.

a notary who circulates a page of a nomination petition ceases to be a disinterested, impartial party and thus is disqualified from performing notarial acts regarding other pages of the petition. I do not consider this conclusion to stem from case law but rather from a straightforward reading of OCGA § 45-17-8 (c) and OCGA § 21-2-170 of the Georgia Election Code. While a reference to *Poppell* might be beneficial to a potential candidate, that case does not serve as the sole legal source for the necessary information, since the plain language in OCGA § 45-17-8 (c) alone alerts potential candidates that no person can qualify as a disinterested and impartial notary if that person is so involved in a candidate's nomination petition that he circulates pages of the petition in the candidate's support. Accordingly, because parties are presumed to know the law, including the law governing what actions would disqualify any notary involved in performing the notarial act required by the Election Code, and because in this case the information provided by the Secretary of State was legally sufficient, I concur in judgment only.

I am authorized to state that Chief Justice Benham joins in this special concurrence.

DECIDED OCTOBER 22, 1998.

*Emily M. Lewy,* pro se.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Rebecca S. Mick, Assistant Attorney General,* for appellees.
*Troutman Sanders, Norman L. Underwood, Charles F. Palmer, Peevy & Lancaster, Donn M. Peevy, Gregory W. Lancaster, Barnes, Browning, Tanksley & Casurella, George T. Smith, Walker L. Chandler,* amici curiae.