## A00A0784. HOWARD v. TECHNOSYSTEMS CONSOLIDATED CORPORATION et al.
### (536 SE2d 753)

MILLER, Judge.

Lynnell F. Howard filed a pro se complaint alleging claims for negligence, breach of contract, fraud and deceit, and misrepresentation against Technosystems Consolidated Corporation, Intromark, Inc., and Invention Submission Corporation ("ISC").[1] To attempt to effectuate service against these nonresident corporations, Howard served the Secretary of State under OCGA § 14-2-1510 (b) and mailed the defendants copies of the complaint and summons by "restricted delivery." After Howard obtained an order declaring them in default, the defendants successfully petitioned to open that default. Discovery ensued, and the defendants eventually prevailed on summary judgment.

In this appeal, Howard contends that the trial court erred in opening default and by awarding summary judgment. After reviewing the record and finding no merit to either purported error, we affirm.

The underlying case arose after Howard, a self-declared "inventor," entered into several contractual agreements with ISC. Howard claimed to be the inventor of a pen and pencil that would emit musical tones upon activation. Howard dubbed the product, "E-rasers." After executing a submission agreement in August 1995 with ISC that obligated her to make scheduled payments in excess of $7,100, Howard fell into arrears on those payments. Seven months later, in April 1996, Howard and ISC reached a settlement in which ISC agreed to cancel the past due balance of $7,454.92 and Howard agreed not to disparage ISC in any manner.

Shortly after that settlement, Howard informed ISC that she had discovered a similar product being distributed by Pentech International ("Pentech") and being sold at Wal-Mart stores. Howard claimed that the original idea for this musical pen "was stolen from her by ISC and divulged to PenTech." In late September 1996, Howard began picketing outside ISC's Atlanta office and eventually accused ISC of conspiring to kill her, firing gunshots at her, and attempting to run her over with a car.[2]

ISC introduced evidence to establish that Ran Artsi, the president of Mega Sound Technologies Limited ("Mega Sound"), an Israeli

---

[1] Martin S. Berger, the president of Technosystems Consolidated Corporation, Intromark, Inc., and ISC, testified that Intromark and ISC are "wholly owned subsidiaries" of Technosystems, a Delaware corporation. According to Berger, Intromark and ISC are "corporations organized and operating under the laws of the Commonwealth of Pennsylvania."

[2] None of these allegations are raised in Howard's lawsuit.

company, invented the "Song Writer Musical Ballpoint Pen" at issue. Artsi testified that he created the prototype for the pen and applied for a patent in 1992, nearly four years before Howard approached ISC with her idea.

Artsi testified that Mega Sound had been formed in late 1991 to start work on a project, the musical pen. According to Artsi, the electronics, components, modules, and prototypes were created in Israel in early 1992, while the plastic molds were created in the Orient in 1993. Artsi testified that although a U. S. patent had been applied for in August 1992, that effort was later abandoned due to the expense. According to Artsi's uncontradicted testimony, in early 1994, The Disney Store, Limited, in London contracted with Mega Sound to produce a musical pen with a sound chip for the song "A Friend Like Me" from the movie *Aladdin*.

Artsi's testimony was supported by nearly 50 documents including correspondence, faxes, purchase orders, technical drawings, and invoices substantiating the existence of Mega Sound's contract with The Disney Store to make a musical pen featuring the song, "A Friend Like Me." This documentation includes a purchase order dated June 22, 1994, from The Disney Store for the manufacture of 10,000 of these musical pens by Mega Sound.

Artsi testified that in January 1995 he met Norman Melnick, a representative of Pentech at a trade fair in Frankfurt, Germany. After Melnick expressed interest in the Disney pen, Mega Sound started working on other projects for Pentech to distribute and sell. Artsi testified that he had never heard of Howard's invention or seen any drawings of the E-raser before learning about her lawsuit.

Melnick confirmed that Pentech distributed the musical pen at issue to retailers including Wal-Mart. Melnick testified that the musical pen from Mega Sound was the "only musical ballpoint that Pentech ever purchased or distributed." According to Melnick, Pentech "stopped distributing the Musical Pen in 1996 because sales for the product were poor."

1. Howard asserts that the trial court erred in opening default. We disagree.

Under OCGA § 9-11-55 (b), a prejudgment default may be opened upon any one of three grounds provided that four conditions are met.[3] The three grounds are: providential cause, excusable neglect, and proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense.[4] Opening

---

[3] *Pulliam v. Nichols*, 202 Ga. App. 95, 96 (413 SE2d 215) (1991).

[4] *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828, 834 (4) (360 SE2d 280) (1987).

default is a matter resting within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed absent a showing of abuse.[5]

Howard attempted service on these foreign corporations under OCGA § 14-2-1510 (b). This statute, however, applies only to those corporations who fail to obtain a certificate to transact business or fail to appoint a registered agent for service as required by law.[6] Process mailed to a corporation must strictly comply with the statutory terms of subsection (b).[7] Even assuming arguendo that Howard was entitled to utilize this statute, she failed to use it properly. Howard sent copies of the summons and complaint via priority mail, certified return receipt with the additional designation of "restricted delivery." All six sets so mailed were returned to her marked "REFUSED." Although corporate president Berger testified that these companies maintain their principal offices at 217 Ninth Street in Pittsburgh, Howard sent the summons and complaint by certified mail, restricted delivery, to 903 Liberty Avenue and 701 Smithfield Street.

When Howard designated that the mail be processed via "restricted delivery," she enhanced the complexity of service and made it less likely for the addressees to receive the mail intended for them. Howard also failed to direct the mail to the appropriate address of the principal office. Because there is considerable doubt that Howard complied with the requirements of OCGA § 14-2-1510 (b), service was arguably defective.[8] Defective or doubtful service makes out a proper case for opening default.[9]

The petition to open default complied with the statutory requirements set forth in OCGA § 9-11-55 (b). The defendants announced they were ready to proceed with trial and supported the motion with evidence. In a supporting affidavit, Berger testified that he did not learn about the lawsuit until after default; Berger denied conspiring with Pentech or selling or appropriating Howard's invention; and he asserted having a complete and meritorious defense to all claims. In these circumstances, the trial court did not abuse its discretion in opening default.[10]

2. Howard contends the trial court erred in granting summary judgment. Howard's complaint contains four counts: negligence,

---

[5] *Pulliam*, supra, 202 Ga. App. at 96.

[6] *Spiegel, Inc. v. Odum*, 153 Ga. App. 380, 382 (265 SE2d 297) (1980).

[7] *Hester v. Human*, 211 Ga. App. 351, 353 (2) (439 SE2d 50) (1993).

[8] Id.

[9] See *Brunswick Hardware Co. v. Bingham*, 107 Ga. 270, 273-274 (33 SE 56) (1899) (improper attempt at substituted service on nonresident authorized setting aside default judgment). Compare *Ellerbee*, supra, 183 Ga. App. at 834 (4).

[10] *Clements v. United Equity Corp.*, 125 Ga. App. 711 (188 SE2d 923) (1972) (when conditions precedent are met, trial court has wide discretion to open prejudgment default).

breach of contract, fraud and deceit, and misrepresentation. Her entire case, however, hinges on her claim that ISC breached the contract, engaged in fraud and deceit, and misrepresented facts to her by divulging confidential information to Pentech about her invention enabling Pentech to market her creation with impunity.

On summary judgment, a defendant can prevail by pointing out the absence of evidence to support at least one essential element of a plaintiff's claim.[11] Here, the record lacks any evidence that ISC negligently or improperly disclosed information about Howard's invention to Pentech. On the contrary, the evidence shows that Mega Sound was already producing the musical pen in question well before Howard first broached her concept to ISC and that Pentech was already distributing the musical pen in question before Howard paid her first visit to ISC.[12] In the absence of some evidence that ISC violated a duty and thereby caused harm to her, summary judgment as to the negligence claim was properly granted.[13]

The gist of Howard's breach of contract claim is that the defendants "disclosed, released and sold Plaintiff's idea to others," and that they placed her "confidential invention on the market" without her knowledge or consent. But it is undisputed that Howard and ISC executed a settlement agreement expressly covering "all differences of any kind," pertaining to the original contract. Howard's signature appears beneath the statement: "I agree that this is in full settlement of all differences between Invention Submission Corporation and myself." Notwithstanding the plain and unambiguous terms of the settlement agreement, Howard sought to enforce certain terms of the original contract. Having pierced the pleadings on this claim, ISC was entitled to summary judgment.[14]

An action for fraud requires proof of five elements: a false representation by defendant, scienter, an intent to induce plaintiff to act or refrain from action, reliance upon the representations, and damages caused as a result of that reliance.[15] When evidence is lacking as to any essential element, a fraud claim cannot stand.[16] Here, the record does not contain evidence that ISC intended to deceive Howard or induced her to act or to refrain from acting. Nor is there evidence that ISC misrepresented the marketability of the invention or

[11] *Hambrick v. B. G. Swing Games Mgmt.*, 267 Ga. 597, 599 (481 SE2d 816) (1997).

[12] Howard offered some evidence suggesting that ISC provided submission material about her musical pen to Pentech in January 1996. But even if true, that would have occurred after the musical pen was already being marketed by Pentech.

[13] *Tuggle v. Helms*, 231 Ga. App. 899, 903 (2) (499 SE2d 365) (1998).

[14] *T & R Custom, Inc. v. Liberty Mut. Ins. Co.*, 227 Ga. App. 144, 145 (1) (488 SE2d 705) (1997).

[15] *Gantt v. Bennett*, 231 Ga. App. 238, 240 (1) (499 SE2d 75) (1998).

[16] *Brown v. Buffington*, 203 Ga. App. 402 (416 SE2d 883) (1992).

attempted to dissuade her from pursuing it.[17] On the contrary, it appears that the musical pen concept was, in fact, an intriguing idea, but that someone else was first to market it, albeit unsuccessfully.

After ISC came forward with overwhelming evidence negating an essential element of each claim, Howard could no longer rest on her pleadings but needed to point to specific evidence that would show a material issue of disputed fact. This she failed to do. Summary judgment was appropriately granted.[18]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 30, 2000 

Lynnell F. Howard, *pro se.*
*Sell & Melton, Jeffrey B. Hanson*, for appellees.

---

[17] The record contains a consent decree apparently entered in February 1994 in Civil Action No. 93-616, in United States District Court for the Western District of Pennsylvania. In *Fed. Trade Comm. v. Invention Submission Corp., Western Invention Submission Corp., Intromark, Inc., Technosystems Consolidated Corp., and Martin S. Berger, individually*, these defendants agreed to pay a judgment in the amount of $1,200,000 to the FTC and agreed to furnish certain disclosures to their clientele to avoid making misrepresentations.

[18] *Collins v. Byrd*, 204 Ga. App. 893, 894 (1) (420 SE2d 785) (1992).