**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 15, 2019**

# In the Court of Appeals of Georgia

A18A1664. TURFSTORE.COM, INC. v. HALL et al.

MCFADDEN, Presiding Judge.

This appeal is from the denial of a motion to set aside a default judgment. The trial court entered the default judgment against Turfstore.Com, Inc., over Turfstore's objection. Turfstore contends that it was not properly served and so the judgment against it is unsustainable. We agree that the default judgment cannot stand.

The purported service was undertaken in reliance on OCGA § 14-2-1510 (b), which is for out-of-state corporations without a registered agent. That purported service was delivery of the summons and complaint by UPS to one of Turfstore's competitors, which forwarded them to Turfstore more than three months later. Turfstore filed its verified answer seven days after receiving them.

We assume without deciding that Turfstore did not have a registered agent and so that the OCGA § 14-2-1510 (b) procedure was available. Having made that assumption we turn to OCGA § 14-2-1510 (c), which specifies three possible occasions when service under subsection (b) is deemed perfected. Two of those possibilities are plainly foreclosed. There is no "return receipt . . . signed on behalf of [Turfstore.]" See OCGA § 14-2-1510 (c) (2). And Turfstore was not served by United States mail. See OCGA § 14-2-1510 (c) (3). The remaining possibility is "[t]he date [Turfstore] receive[d]" the summons and complaint. OCGA § 14-2-1510 (c) (1). But Turfstore answered seven days after that date. So it did not default.

1. *Facts and procedural history.*

The facts are undisputed — although the parties disagree about whether Turfstore had a registered agent. The underlying dispute is about two commercial leases under which Turfstore was a tenant. Plaintiffs, Shelley Hall (in her role as administrator with will annexed of John Wayne Hall) and Wilma Jean Erwin, were the landlords. Turfstore notified Hall and Erwin that it would be ending the leases as of June 30, 2017, leading to a dispute between the parties about the terms of the leases. Turfstore ultimately vacated the properties and stopped paying rent. Turfstore

2

had listed those premises with the Secretary of State as the address for its registered agent, and it apparently did not update that listing.

On September 13, 2017, Hall and Erwin filed a verified complaint alleging that Turfstore breached the terms of the leases and seeking over $1.8 million in liquidated damages. Taking the position that Turfstore, a Delaware corporation, lacked a registered agent in Georgia, Hall and Erwin stated in their complaint that they would serve Turfstore under OCGA § 14-2-1510 (b), which provides a means of service upon a foreign corporation if the corporation either "has no registered agent or its registered agent cannot with reasonable diligence be served[.]" Id.

Hall and Erwin attempted to serve Turfstore with the summons and complaint using a commercial firm, UPS. See OCGA § 14-2-1510 (b) (permitting service by statutory overnight delivery, among other methods). See also OCGA § 9-10-12 (b) (1) (statutory overnight delivery includes delivery through certain commercial firms). The UPS package was shipped on September 15, 2017, to the premises at issue, which was the address listed as Turfstore's principal office address on its January 2017 annual registration filed with the Georgia Secretary of State. So Hall and Erwin, and their counsel, apparently were aware that Turfstore was no longer at that address.

Because Turfstore was no longer at that address, UPS was unable to deliver the package to it. Instead, UPS delivered the package to a different business at a different address. That business, TurfNation, was not affiliated with Turfstore. A TurfNation employee received the package on September 19, 2017, and forwarded it to Turfstore on January 4, 2018.

On January 3, 2018, the day before Turfstore received that package containing the summons and complaint from TurfNation, Hall and Erwin filed a motion asking the trial court to grant them a default judgment on the ground that they had perfected service upon Turfstore on September 15, 2017, when UPS took custody of the summons and complaint, and that Turfstore had not filed either an answer or other responsive pleading. On January 11, Turfstore filed both a verified answer and a brief opposing the entry of a default judgment. Among other things, Turfstore denied that it had breached the leases, argued that it had not been properly served with the complaint, and contested the plaintiffs' assertion that it lacked a registered agent.

The trial court entered a default judgment against Turfstore on February 15, 2018, reasoning that Turfstore had "made no appearance or defense in the [case] and [that] service ha[d] been perfected according to law, more than forty-five days ha[d] elapsed[,] and the case [was] in default[.]" The trial court made no express finding

4

about whether Turfstore had a registered agent in the order. The trial court also did not refer either to Turfstore's answer or to its filing opposing the default judgment in the order. Turfstore appeals from the entry of the default judgment, arguing that the ruling was error because Turfstore was not properly served and, alternatively, that the trial court should have opened default.

2. *Service of process.*

As for the argument that the trial court should have opened default, Hall and Erwin correctly note that the issue would need to be addressed by the trial court in the first instance. They urge us to remand so that he can do so.

But we need not reach that issue, because the entry of the default judgment is a separate, dispositive, and directly appealable question. *Scott v. Prestige Financial Svcs.*, 345 Ga. App. 530, 531 n. 1 (813 SE2d 610) (2018). So we review Turfstore's argument that, because it was not properly served, the trial court erred in entering the default judgment against it. Our review is deferential on the facts, but not on the law. We uphold the trial court's factual findings regarding service if there is any evidence to support them, but we review de novo the trial court's rulings on questions of law. *STL Mgmt. Consultants, LLC v. Manhattan Leasing Enterprises, Ltd.,* 333 Ga. App.

309, 311 (775 SE2d 758) (2015). Applying this standard of review, we agree with Turfstore.

If, as the trial court found, Turstore had "made no appearance or defense in the case" for more than 45 days after service had been perfected upon it, the then the trial court would have had the power under OCGA § 9-11-55 (a) to enter the default judgment. That Code section provides that, before a trial court may enter a default judgment, the case must be in default and the 15-day period during which the default may be opened as a matter of right must have passed. See OCGA § 9-11-55 (a). Generally, a case automatically becomes in defautl if "an answer has not been filed within the time required by [our Civil Practice Act]," id., which requires a defendant to "serve his answer within 30 days after the service of the summons and complaint upon him, unless otherwise provided by statue." OCGA § 9-11-12 (a). Where service is not perfected on the defendant and the defendant does not waive service, then the defendant's time to answer does not begin to run and no default exists. See *Nally v. Bartow County Grand Jurors*, 280 Ga. 790, 792 (6) (633 SE2d 337) (2006).

Here, there is no evidence to support the finding that Trufstore defaulted. Hall and Erwin argue that they perfected service on Turfstore under OCGA § 14-2-1510 (b), which provides:

If a foreign corporation has no registered agent or its registered agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to the chief executive officer, chief financial officer, or secretary of the foreign corporation, or a person holding a position comparable to any of the foregoing, at its principal office shown in the later of its application for a certificate of authority or its most recent annual registration. Any party that serves a foreign corporation in accordance with this subsection shall also serve a copy of the process upon the Secretary of State and shall pay a $10.00 filing fee.

The parties dispute whether Turfstore lacked a registered agent who could with reasonable diligence be served, a prerequisite for service under OCGA § 14-2-1510 (b). See *Howard v. Technosystems Consolidated Corp.,* 244 Ga. App. 767, 769 (1) (536 SEd 753) (2000) (OCGA § 14-2-1510 (b) "applies only to those corporations who fail to obtain a certificate to transact business or fail to appoint a registered agent for service as required by law") (citation omitted).

But even if we assume that Hall and Erwin could serve Turfstore under OCGA § 14-2-1510 (b), it does not follow that Turfstore failed to answer or otherwise respond within 45 days of service. Service under OCGA § 14-2-1510 (b) is perfected "at the earliest of: (1) The date the foreign corporation receives the mail; (2) The date shown on the return receipt, if signed on behalf of the foreign corporation; or (3) Five

7

days after its deposit in the United States mail[.]" OCGA § 14-2-1510 (c). Even if we assume that Turfstore's receipt of the forwarded UPS package from TurfNation constituted perfected service under OCGA § 14-2-1510 (c) (1), it is undisputed that Turfstore received the package on January 4, 2018, and filed its answer seven days later. So if service was perfected under OCGA § 14-2-1510 (c) (1), then Turfstore was not in default. See OCGA § 9-11-55 (a); *Nally,* 280 Ga. at 792 (6). There is no evidence to support a finding that service was perfected before January 4, 2018, pursuant to under OCGA § 14-2-1510 (c) (2), because the record does not contain either a return receipt or any evidence that the TurfNation employee who received the misdirected UPS package acted on behalf of Turfstore. And by its terms the third means of perfecting service, set forth in OCGA § 14-15-1510 (c) (3), does not apply in this case. That means of perfecting service applies only to a summons and complaint "deposit[ed] in the United States mail[,]" OCGA § 14-2-1510 (c) (3), and the summons and complaint in this case were deposited instead with a commercial firm. While a commercial firm such as UPS can provide an acceptable means of "statutory overnight delivery" service, it is not "the United States mail" to which OCGA § 14-2-1510 (c) (3) refers. See OCGA § 9-10-12 (b) (1) ("statutory overnight delivery" includes delivery "through the United States Postal Service *or* through a

8

commercial firm which is regularly engaged in the business of . . . document and package delivery") (emphasis supplied). See generally *Cheshire Bridge Enterprises v. Lexington Ins. Co.,* 183 Ga. App. 672, 674 (1) (359) SE2d 702) (1987) (rules governing service of process must be strictly construed).

Because there is no evidence that Turfstore failed to answer or otherwise respond within 45 days after service of the summons and complaint was perfected upon it, the case never went into default and the trial court was not authorized to enter a default judgment. See OCGA § 9-11-55 (a).

3. *Failure to open default.*

Given our conclusion in Division 2, we do not reach Turfstore's other claim of error, that the trial court erred in failing to open default. See *Barbour v. Sangha,* 346 Ga. App. 13, 16 (3) (815 SE2d 228) (2018) (where case never went into default, whether to open default is not at issue).

*Judgment reversed. Rickman and Markle, JJ., concur.*