**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 13, 2022**

# In the Court of Appeals of Georgia

A22A0119.  RICHARDS  v.  OPTEUM  MORTGAGE  d/b/a/
OPTEUM MORTGAGE ACCEPTANCE CORP. et al.

PINSON, Judge.

Mark Richards filed an action to quiet title against his mortgage lender and one of the lender's employees. Because he could not locate either defendant for service of process, he served the lender by mailing the summons and complaint to the Georgia Secretary of State and to the chief executive officer at a corporate address, and he served the individual defendant by publication. Neither defendant appeared, and the trial court *sua sponte* dismissed the action without prejudice because (1) the lender was never properly served and (2) venue was improper because Richards filed suit in the county where the mortgaged property was located, not where either defendant resided.

We affirm the trial court's dismissal of the lender from the action because the methods Richards used for service do not apply here. Richards's lender is a foreign corporation. Under OCGA § 14-2-1501, making or acquiring mortgage loans is not "transacting business" in Georgia, which means that a foreign corporation engaged in that conduct does not need a certificate of authority from the Secretary of State. And both of the statutory provisions on which Richards relies authorize methods of service only for domestic corporations or for foreign corporations that do "transact business" in Georgia (and thus have or should have certificates of authority). But we vacate the dismissal of the action against the individual defendant. Although we agree with the trial court that Richards filed suit in the wrong venue, transfer is the appropriate remedy.

## Background

Richards filed a quiet title action under OCGA § 23-3-40 against his mortgage lender, Opteum Mortgage, and one of Opteum's employees, Yvette Sullins. He alleged that when he obtained his mortgage, Opteum and Sullins fraudulently altered the paperwork to say that the security deed was conveyed to Mortgage Electronic Registration System, Inc., and not, as Richards intended, to Opteum itself. Richards filed in Rockdale County, asserting that venue was proper there "because it is where

the real property lies, and it is where most events accrued with respect to Plaintiff's claims." He sought a declaratory judgment that because the deed had been altered it was void, and that he was the legal owner of the subject property.

Richards quickly ran into trouble trying to serve the defendants. The day after filing the complaint, Richards submitted an affidavit from a process server, who attested that he had unsuccessfully attempted to serve Opteum at "some of [its] last known addresses within this State," that he had found no registered agent for Opteum in the records of the Georgia Secretary of State, and that "no one with reasonable diligence would be able to locate [Opteum] within this State." The process server therefore stated that he had perfected service on Opteum in two ways: first, by serving the Georgia Secretary of State under OCGA § 9-11-4 (e) (1); and second, by mailing the summons and complaint to Opteum's CEO at the address that appeared on Richards's loan document, under OCGA § 14-2-1510 (b). Richards also submitted a second affidavit from the process server detailing his "due diligen[ce] search" for the defendants. The process server had searched Google, court records, social media websites, telephone books, and records from the post office and the Securities and Exchange Commission, all to no avail. In addition to the process server's affidavits, Richards submitted his own sworn "Certification of Service of Process," in which he

stated that Opteum had "failed to obtain a certificate of authority and to maintain a registered office or to appoint a registered agent within this State."

As to the other defendant, Sullins, Richards moved for leave to serve her by publication after failing to serve her by another method for more than two months. In the motion, Richards stated that he had undertaken various efforts to locate Sullins, but that she had "no last known address" and could not be found within Georgia through the exercise of due diligence. That same day, the trial court granted the motion and ordered that Sullins be served by publication under OCGA § 9-11-4 (f) (1) (A) & (B). The notice appeared in a local newspaper on four consecutive Wednesdays.

In sum: Richards served one defendant, Opteum, both by service on the Secretary of State and by a mailing to its last known address and the other, Sullins, by publication with the permission of the trial court.

Neither defendant appeared in the action in any capacity. Richards moved for a default judgment. The trial court scheduled the matter for its No Service Calendar.

A few weeks after the calendar call, the trial court dismissed the action without prejudice. The trial court first concluded that venue was improper: Richards had filed the lawsuit in Rockdale County, where his mortgaged property was located, rather

4

than in a county where a defendant resided, as required for an ordinary quiet title action. The trial court further found that Opteum was never properly served. The court reasoned that, by statute, the methods of service that Richards used (serving the Secretary of State and mailing the complaint to Opteum's last known address) applied only to corporations authorized to transact business in Georgia, but by Richards's own sworn admission, Opteum was "a foreign corporation who was never authorized to transact business in this state." The trial court concluded, "[i]n as much as service has not been perfected on Opteum Mortgage and this Court is not the proper venue for this action," the action should be dismissed without prejudice. Richards appealed.

Discussion

1. Richards contends that the trial court erred in dismissing Opteum from the lawsuit based on insufficient service. We review that decision only for abuse of discretion. See *Griffin v. Stewart*, 362 Ga. App. 669, 669 (870 SE2d 3) (2022).

(a) Because it matters to the service question, we start with Opteum's status as a corporation in Georgia. Under the Georgia Business Corporation Code, a foreign corporation needs a "certificate of authority" from the Secretary of State to "transact business in this state." OCGA § 14-2-1501 (a). But a foreign corporation whose business is only "[m]aking loans or creating or acquiring evidences of debt,

5

mortgages, or liens on real or personal property, or recording same" does not need a certificate of authority to transact business in Georgia because that conduct, by statute, "do[es] not constitute transacting business." OCGA § 14-2-1501 (b) (7); see also *Powder Springs Holdings, LLC v. RL BB ACQ II-GA PSH, LLC*, 325 Ga. App. 694, 696 (1) (754 SE2d 655) (2014) (under similar statute that applies to limited liability companies, defendant LLC was not required to obtain certificate of authority when record evidence showed its business in Georgia was acquiring loan documents, advertising and conducting foreclosure sale, purchasing property at sale, reporting sale, and filing confirmation petition). The evidence here shows that Opteum is a foreign corporation (the process server could not find any agent for Opteum registered with the Georgia Secretary of State), and there is no evidence that its business in Georgia consisted of anything other than making or acquiring mortgage loans. So we find no error, let alone clear error, in the trial court's factual finding—based on Richards's "Certification of Service of Process" —that Opteum Mortgage was a "foreign corporation not authorized to transact business in Georgia." See *Singh v. Hammond*, 292 Ga. 579, 581 (2) (740 SE2d 126) (2013) (when trial court is finder of fact, its factual findings are not set aside unless clearly erroneous).

6

(b) Under the Civil Practice Act, a litigant may serve "a foreign corporation doing business in this state without authorization to transact business in this state" (i.e., Opteum) in one of two ways: (1) by delivering the summons and complaint to a "registered agent designated for service of process"—which Opteum did not have—or (2) by delivering the summons and complaint to a "managing agent," defined as a corporate employee "who is at an office or facility in this state and who has managerial or supervisory authority." OCGA § 9-11-4 (e) (2) (A) & (B); see *GMAC Mortg. Corp. v. Bongiorno*, 277 Ga. App. 328, 330 (626 SE2d 536) (2006) (service on local branch manager of mortgage company was sufficient under OCGA § 9-11-4 (e) (2)).

Richards did not serve Opteum using either of those authorized methods. Instead, he mailed the summons and complaint to the Secretary of State and to Opteum's CEO at an address that, at least at one time, was a business address for Opteum. Those mailings were not effective service here. Mailing process to the Secretary of State counts as service only if serving "a corporation incorporated or domesticated under the laws of this state or a foreign corporation authorized to transact business in this state," OCGA § 9-11-4 (e) (1) (A), but again, Opteum was neither of those things. And the CEO was not a "managing agent" under the statute

7

because there is no evidence he was ever "at [the] office . . . in this state" to which process was mailed. See OCGA § 9-11-4 (e) (2) (B). Indeed, the evidence shows the opposite: the process server attested that he unsuccessfully attempted to serve Opteum at "some of [its] last known addresses within this State," and that he fruitlessly searched Google, social media, court and post office records, and other sources, but that "no one with reasonable diligence would be able to locate . . . Opteum Mortgage within this State."

(c) Richards contends in the alternative that mailing the summons and complaint to Opteum's CEO was effective service under OCGA § 14-2-1510 (b), part of the Georgia Business Corporation Code. See *Ticor Const. Co. v. Brown*, 255 Ga. 547, 549 (3) (340 SE2d 923) (1986) ("[A] plaintiff may serve a defendant corporation by following the directions of the Civil Practice Act or by following the directions of the Georgia Business Corporation Code.") (citation and punctuation omitted). He points out that this statute allows a plaintiff to serve a "foreign corporation [that] has no registered agent" in Georgia by mailing process to the chief executive officer at its principal office. OCGA § 14-2-1510 (b).

Richards's service by mail was not authorized by this statute. The U.S. District Court for the Southern District of Georgia addressed and rejected an identical

8

contention that OCGA § 14-2-1510 authorized service by mail for any foreign corporation:

> Section 14–2–1510 (b) provides that the process must be mailed to the address of the principal office as shown "in the later of its application for a certificate of authority or its most recent annual registration." Directing parties to mail the process to the addresses as shown in those documents necessarily assumes that service is to be made upon foreign corporations that either hold a certificate of authority or have applied for such certificate. Section 14–2–1510 (b) makes no other provision with respect to addresses, and the absence of such a provision indicates that service by mail was contemplated with respect only to foreign corporations holding a certificate of authority or applying for such certificate.

*Tomlin v. White Dairy Ice Cream Co., Inc.*, 13 F. Supp. 2d 1354, 1356-57 (S.D. Ga. 1997) (citation omitted). We agree. As the district court concluded, "service of process by mail under section 14–2–1510 (b) applies only to foreign corporations that hold a certificate of authority or that transact business within Georgia" (and are thus required to apply for such a certificate). Id. at 1357. And, as we just explained, the evidence establishes that Opteum was not required to obtain a certificate of service because its lending conduct does not count as "transacting business" in Georgia. OCGA § 14-2-1501 (b) (7).

9

This holding is consistent with *Howard v. Technosystems Consolidated Corp.* 244 Ga. App. 767 (536 SE2d 753) (2000), which Richards cites in support of his position. There, we said that OCGA § 14-2-1510 (b) "applies only to those corporations who fail to obtain a certificate to transact business or fail to appoint a registered agent for service *as required by law.*" Id. at 769 (1) (emphasis added). So *Howard* similarly concluded that the statute does not apply to a corporation that is not "required by law" to obtain a certificate or appoint a registered agent. In other words, OCGA § 14-2-1510 (b) may apply when a foreign corporation that is *required* to obtain a certificate of authority has "fail[ed]" to do so. But it does not apply when, as here, a foreign corporation is not required to obtain a certificate of authority in the first place. See *Tomlin*, 13 F. Supp. 2d at 1356–57.

Even if Richards could rely on OCGA § 14-2-1510 (b) to serve Opteum, he did not comply with its terms. The statute requires mailing process to the address provided on either the corporation's application for a certificate of authority or its most recent annual registration. Opteum had neither, so Richards necessarily could not comply. Instead, Richards used an address that appeared on his loan document. The use of that address, not permitted by the statute, would have rendered service defective. See *Howard*, 244 Ga. App. at 769 (1) (explaining that "[p]rocess mailed

10

to a corporation must strictly comply with the statutory terms of [OCGA § 14-2-1510] (b)," and noting that plaintiff had "failed to direct the mail to the appropriate address of the principal office").

*

In sum, none of the methods Richards used to serve Opteum was effective. And because Opteum was never properly served, the trial court did not abuse its discretion by dismissing the company from the action without prejudice. See *Myers v. Clayton Cnty. Dist. Attorney's Office*, 357 Ga. App. 705, 708 (1) (849 SE2d 252) (2020) (affirming dismissal of action against defendant who was never served with summons and complaint).

2. Richards also contends that the trial court erred by dismissing his lawsuit for improper venue. We review de novo a trial court's sua sponte dismissal of an action. *Love v. Fulton Cnty. Bd. of Tax Assessors*, 311 Ga. 682, 690 (2) (2021).

As an initial matter, we agree with the trial court that Richards has not alleged a proper basis for venue in Rockdale County. Richards brought his lawsuit as a conventional quiet title action under OCGA § 23-3-40. That statute provides that such an action is "sustained in equity," OCGA § 23-3-40, and so the proper venue is the "county where a defendant resides against whom substantial relief is prayed." Ga.

11

Const. of 1983, Art. VI, Sec. II, Par. III.; accord *Republic Title Co., LLC v. Andrews*, 347 Ga. App. 463, 465 (819 SE2d 889) (2018). But Richards alleged in his complaint that venue lay in Rockdale County "because it is where the real property lies, and it is where most events accrued with respect to Plaintiff's claims." So the complaint as alleged did not establish Rockdale County as the proper venue for the action.

But when venue is improper, the proper remedy is transfer, not dismissal. That comes straight from the Georgia Constitution, which provides that "[a]ny court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere." Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII. The "manifest purpose" of that clause is "to prevent parties from being penalized when their attorneys, or the parties themselves acting pro se, make a mistake regarding the complex, highly technical rules that govern jurisdiction and venue and inadvertently file a case in the wrong court." *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008). So even when a party seeks dismissal for improper venue, the appropriate response, if venue is in fact improper, is to transfer the case. See *Ga. Dept. of Human Servs. v. Dougherty Cnty.*, 330 Ga. App. 581, 583 (2) (768 SE2d 771) (2015); *Coastal Transport, Inc. v. Tillery*, 270 Ga.

12

App. 135, 140 (3) (605 SE2d 865) (2004); *Farrell v. HRC Armco, Inc.*, 253 Ga. App. 633, 633 (560 SE2d 107) (2002).

Here, the proper venue is the county where a defendant resides. In light of our holding in Division 1, that means the county where Sullins, the sole remaining defendant, resides. So we vacate the portion of the trial court's order dismissing the case against Sullins and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded in part. McFadden, P. J., and Gobeil, J., concur.*